```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X Civil Action No. _____
ROYAL FOOTWEAR AND ACCESSORIES, LLC,
                                        COMPLAINT
            Plaintiffs,

    -against-

SELDAT, INC., SELDAT DISTRIBUTION,
INC. (CA entity), SELDAT DISTRIBUTION,
INC. (NJ entity), SELDAT LIMITED
LIABILITY PARTNERSHIP, SELDAT
DISTRIBUTION CORPORATION, SELDAT
TRANSPORTATION INC., SELDAT CORPORATION,
DANIEL DADOUN and ABC CORP.,

            Defendants.
------------------------------------X
```

Plaintiff, by its attorney, Gabriel Fischbarg, Esq., as and for its Complaint against defendants herein, allege as follows:

1. At all relevant times, plaintiff was and still is a privately held corporation organized and existing pursuant to the laws of the State of New York with a principal place of business in New York.

2. Upon information and belief, defendant Seldat, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in New Jersey.

3. Upon information and belief, defendant Seldat Distribution, Inc. is a corporation organized and existing under the laws of the State of California with a principal place of business in New Jersey.

4. Upon information and belief, defendant Seldat Distribution, Inc. is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business in New Jersey.

5. Upon information and belief, defendant Seldat Limited Liability Partnership is a limited liability partnership organized and existing under the laws of the State of New Jersey with a principal place of business in New Jersey.

6. Upon information and belief, defendant Seldat Distribution Corporation is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business in New Jersey.

7. Upon information and belief, defendant Seldat Transportation Inc. is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business in New Jersey.

8. Upon information and belief, defendant Seldat Corporation is a corporation organized and existing under the laws of the country of Canada with a principal place of business in New Jersey.

9. Upon information and belief, defendant ABC Corp. is an entity with a name currently unknown to plaintiffs organized and existing under the laws of an unknown State with a principal place of business in New Jersey and under the control of Daniel Dadoun, a Canadian citizen residing in New Jersey.  Upon information and belief, defendant Daniel Dadoun, a Canadian citizen residing in New Jersey, is an officer, sole owner and sole controlling party of all the other defendants.

10. Upon information and belief, defendants and each of them were the agents, employees, partners, joint-venturers, co-conspirators, owners, principals, shareholders, members,

officers, directors and/or employers of the remaining defendants, and each of them and are and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership, membership or joint venture, and that the acts and conduct herein alleged of each such defendant were known to, authorized by and/or ratified by the other defendants, and each of them.

11.  This action arises under 28 U.S.C. 1332 (a)(1), i.e., as a civil action between citizens of different states with the matter in controversy exceeding the value of $75,000.00, exclusive of interest and costs. Pendent jurisdiction over all claims and parties arising from the same nucleus of operative facts lies in consideration of judicial economy, convenience, and fairness to litigants.  Venue is proper in this District.

12.  Plaintiff is a manufacturer of wearable merchandise for sale to plaintiff's customers who are retailers that then sell the merchandise to the public.  On or about June, 2016, plaintiff, on the one hand, and defendants, on the other hand, began a business relationship whereby plaintiff would order certain transportation, delivery and warehouse storage services provided by defendants for plaintiff's merchandise pursuant to a purchase order/invoice system.  In return for defendants' providing proper, standard and satisfactory transportation, delivery and warehousing services to plaintiff, plaintiff agreed to pay defendants pursuant to a set pricing schedule.

13.  From approximately June, 2016 until December, 2016, plaintiff submitted hundreds of purchase orders for

transportation, delivery and/or storage services from the defendants. Such "purchase orders" consisted of (1) Delivery Notices from a freight forwarder that was delivering a container containing plaintiff's merchandise on a container ship to a port, (2) Work Orders requesting that defendants sort or manipulate plaintiff's merchandise in a specific manner, (3) Pick Tickets requesting that defendants deliver plaintiff's merchandise to a customer of plaintiff, (4) Transfer Notices requesting that defendants retrieve plaintiff's merchandise from a certain warehouse for storage at defendants' premises and (5) Return Authorizations requesting that defendant accept plaintiff's merchandise returned by customer for storage at defendants' premises upon delivery to defendants' premises.  A request by plaintiff for storage services by defendants occurs whenever a Delivery Notice or Transfer Notice is issued and corresponding Pick Tickets do not result in the removal of all merchandise from defendants' premises immediately thereafter.

14.  Defendants materially failed to perform the services requested by virtually every Pick Ticket submitted by plaintiff. Defendants also materially failed to perform the services requested by many Transfer Notices, Return Authorizations, Delivery Notices and Work Orders.  With respect to improper warehousing and storage services provided by defendants, defendants have permanently lost, damaged or destroyed a large quantity of plaintiff's merchandise.

15.  With respect to improper transportation and delivery services provided by defendants, defendants have, among other

4

things, (1) failed to make a delivery requested by plaintiff (2) failed to deliver the correct quantity of plaintiff's merchandise requested by plaintiff to plaintiff's customers, (3) damaged plaintiff's merchandise and then delivered plaintiff's merchandise in damaged conditioned to plaintiff's customers, (4) failed to perform the specific instructions on a Pick Ticket thereby committing "routing" errors for which plaintiff was monetarily penalized by its customers, and/or (5) delivered plaintiff's merchandise unreasonably late to plaintiff's customers.

16. In addition, many invoices associated with plaintiff's purchase orders contained fabricated, unapproved, incorrect and/or inflated charges. Many invoices submitted by defendants contain fabricated items of work.

17. As a result of defendants' unsatisfactory work, plaintiff has lost a tremendous amount of good will with its customers who were not delivered the goods promised to them by plaintiff and ordered by plaintiff's customers. As a result of defendants' unsatisfactory work, plaintiff could not properly deliver the goods specifically ordered by plaintiff's customers and thereby lost profits of approximately $37,000.00.

18. Plaintiff also had to provide discounts, deductions, refunds and/or credits and/or incur penalty charges ("chargebacks") to customers amounting to $98,855.93 because (1) those customers were not provided with the requested merchandise due to defendants' misconduct and unsatisfactory work or (2) defendants failed to follow specific instructions contained within the Pick Tickets.

19. As a result of defendants' unsatisfactory work from June, 2016 to November, 2016, plaintiff ceased submitting purchase orders to defendants in December, 2016. The problems with defendants' work began immediately upon commencement of the relationship between plaintiff and defendants in June, 2016. Defendants convinced plaintiff not to terminate their relationship with defendants during the first few months of the relationship by claiming that defendants' work problems were easily fixable and stemmed only from personnel changes and/or from a computer inventory system that only need some minor adjustments to work properly.

20. After plaintiff agreed to give defendants a few more months to correct their work problems, defendants were still unable to perform the requested services properly, including, without limitation, providing a proper inventory of plaintiff's merchandise stored by the defendants. As a result, plaintiff ceased submitting purchase orders to defendants in December, 2016. Upon information and belief, at all relevant times, defendants, knew or should have known, that they did not have the experience, ability, infrastructure, personnel and/or wherewithal to perform properly and materially the totality of services requested by plaintiff from June, 2016 to November, 2016.

21. As a result of defendants' improper and substandard work, plaintiff was required to send its representatives to visit disgruntled customers around the country in order to personally assure them that plaintiff's merchandise would arrive to them in a timely manner and in the correct quantities requested. Such

travel expenses and overtime salaries amounted to approximately $10,000.00.

22. As a result of defendants' improper and substandard work, one of plaintiff's customers reduced its orders resulting in lost profits of approximately $3,500.00.

23. In addition, plaintiff's website delivery system through Amazon.com was suspended by Amazon.com in October, 2016 due to defendants' improper conduct including defendants' failure to make timely delivery of plaintiff's merchandise to Amazon's warehouse. As a result, plaintiff estimates that it lost approximately $28,000.00 in profits due to its inability to sell through Amazon.com.

24. Because defendants were unwilling or unable to perform certain tasks required by defendants, such as locating merchandise within defendants' warehouses, supervising defendants' workers, and creating an inventory list, plaintiff was required to spend its own funds to perform such work. Such amounts including travel costs and overtime salaries total approximately $22,300.00.

25. At the time that plaintiff ceased submitting purchase orders to defendants in December, 2016, defendants were still storing some of plaintiff's merchandise in their warehouses. Such merchandise has a total manufacturing cost (including shipping and delivery cost) of approximately $778,392.00 to plaintiff. Such merchandise is seasonal and must be sold immediately in order to realize its wholesale value of approximately $1,050,829.00 and provide plaintiff with a profit of approximately $272,437.00. Such merchandise will soon have no value given that the trendy

styles associated with the merchandise have a small window for retail sales and must delivered now to retailers so as to be sellable in time for the fall sales season for some of the merchandiseor  the Christmas sales season for the rest of the merchandise.  Defendants are holding such merchandise hostage claiming that it will be released to plaintiff only (1) after plaintiff pays defendants for fictitious or improper services provided by defendants and (2) after plaintiff waives all its claims for damages resulting from defendants' unsatisfactory work.

26.  If plaintiff is not provided immediate access to defendants' premises in order to retrieve plaintiff's merchandise currently held by defendants and given the opportunity to sell that merchandise immediately to its customers, plaintiff will suffer irreparable harm.

### FIRST CAUSE OF ACTION
### (Breach of Agreements against Defendants)

27.  Plaintiff has properly performed under the purchase order/invoice system with defendants.

28.  In breach of the agreement associated with various purchase orders, defendants have failed to provide proper, standard and satisfactory services.

29.  As a result of such breaches of agreements, plaintiff has been damaged in an amount to be proven at trial, but which is at least $468,000 plus interest thereon.  Such damages include direct, foreseeable and/or consequential damages including, without limitation, plaintiff's out-of-pocket costs incurred to perform tasks that defendant were unwilling or unable to perform,

such as locating merchandise within defendants' warehouse, supervising defendants' workers, and creating an inventory list.

## SECOND CAUSE OF ACTION
### (Negligence)

30. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 29 of the Complaint as if set fully set forth herein.

31. At all relevant times, defendants owed plaintiff a duty of care by virtue of the relationship between the parties.

32. Defendants failed to exercise reasonable care, skill and diligence and breached their duty to plaintiff by the misconduct set forth above.

33. As a direct and proximate result of the negligence of plaintiff alleged above, defendant is entitled to compensatory damages and foreseeable consequential damages in the amount of at least $468,500 (including, without limitation, (1) a return of monies paid by plaintiff to defendants, (2) out-of-pocket expenses and legal fees incurred by plaintiff as a result of the improper work performed by defendants plus applicable interest or such other greater amount to be determined at trial including, without limitation, expert witness fees, costs and attorneys fees.

34. In addition, because defendants' misconduct and actions were in bad faith, in flagrant disregard of their obligations to plaintiff, and were committed maliciously, knowingly, intentionally, recklessly, and/or with a conscious or gross disregard of plaintiff's rights and/or with willful fraud and deceit, plaintiff is entitled to recover punitive damages in an

9

amount to be determined at trial, in addition to the compensatory damages sought herein.

### THIRD CAUSE OF ACTION
### (FRAUD)

35.  Plaintiffs repeat and reallege the allegations of paragraphs 1 through 34 of the Complaint as if set fully set forth herein.

36.  In a face-to-face meeting between Roy Cheika, owner and President of plaintiff, and Joe Shamie, a representative of defendants that took place on February 15, 2016 at a convention in Las Vegas, Nevada, Mr. Cheika informed Mr. Shamie of the scope of work that Mr. Cheika required defendants to perform.  Mr. Shamie orally represented to Mr. Cheika that the defendants were fully capable of performing the required work.  Upon information and belief, in truth, Mr. Shamie knew that defendants (1) were not fully capable of performing the required work and/or (2) did not have the experience, ability, infrastructure, personnel and/or wherewithal to perform properly and materially the totality of services required by plaintiff as described by Mr. Cheika to Mr. Shamie at that meeting.

37.  Plaintiff thereby relied on defendants' misrepresentation and entered into a business relationship with defendants.

38.  In a face-to-face meeting between Roy Cheika, owner and President of plaintiff, Len Bernstein, a representative of plaintiff, defendant Daniel Dadoun, owner and President of defendants, Joe Shamie, a representative of defendants and Aaron

Hunt, a representative of defendants, that took place on October 19, 2016 at plaintiff's offices in New York City, Mr. Cheika informed Mr. Dadoun that defendants were not performing their work properly or in the manner that defendants had previously represented they would perform in the February 15, 2016 meeting described above.  At this October 19, 2016 meeting, Mr. Dadoun responded by orally representing to Mr. Cheika that the defendants were fully capable of performing the required work. Upon information and belief, in truth, Mr. Dadoun knew that defendants (1) were not fully capable of performing the required work and/or (2) did not have the experience, ability, infrastructure, personnel and/or wherewithal to perform properly and materially the totality of services required by plaintiff as described by Mr. Cheika to Mr. Dadoun at the October 19, 2016 meeting.

39. Plaintiff thereby relied on defendants' misrepresentation and continued the business relationship with defendants.

40.  In a face-to-face meeting between Roy Cheika, owner and President of plaintiff, Len Bernstein, a representative of plaintiff, defendant Daniel Dadoun, owner and President of defendants, Joe Shamie, a representative of defendants and Aaron Hunt, a representative of defendants, that took place on November 9, 2016 at plaintiff's offices in New York City, Mr. Cheika informed Mr. Dadoun that defendants were not performing their work properly or in the manner that defendants had previously promised represented they would perform in the February 15, 2016 meeting and October 19, 2016 meeting described above.At this November 9,

11

2016 meeting, Mr. Dadoun responded by orally representing to Mr. Cheika that the defendants were fully capable of performing the required work.  Upon information and belief, in truth, Mr. Dadoun knew that defendants (1) were not fully capable of performing the required work and/or (2)  did not have the experience, ability, infrastructure, personnel and/or wherewithal to perform properly and materially the totality of services required by plaintiff as described by Mr. Cheika to Mr. Dadoun at the November 9, 2016 meeting.

41.  Plaintiff thereby relied on defendants' misrepresentation and continued the business relationship with defendants.

42.  Defendants, through Mr. Dadoun, intentionally and knowingly made false and fraudulent misrepresentations and omissions to induce Plaintiff to enter into a business relationship with defendants or to induce plaintiff to continue its business relationship with defendants.

43.  Plaintiff, to its substantial detriment, reasonably relied on the aforementioned misrepresentations and omissions, believing them to be true, and entered into a business relationship with defendants and/or continued the business relationship after the date of each misrepresentation.

44.  But for defendants' misrepresentations, plaintiff would not have entered into a business relationship with defendants and/or continued the relationship past the date of each misrepresentation.

45.  Because Defendants fraudulently intended to induce

Plaintiff to detrimentally rely on Defendants' intentional misrepresentations and omissions, and because plaintiff did detrimentally rely upon Defendants' intentional misrepresentations and omissions, and because Defendants concealed the truth from Plaintiff, Plaintiff is entitled to compensatory damages and foreseeable consequential damages in the amount of at least $468,000.00, including, without limitation, (1) a return of monies paid by plaintiff to defendants, (2) out-of-pocket expenses and legal fees incurred by plaintiff as a result of the improper work performed by defendants plus applicable interest or such other greater amount to be determined at trial including, without limitation, expert witness fees, costs and attorneys' fees.

46. In addition, because defendants' misconduct and actions were in bad faith, in flagrant disregard of their obligations to plaintiff, and were committed maliciously, knowingly, intentionally, recklessly, and/or with a conscious or gross disregard of plaintiff's rights and/or with willful fraud and deceit, plaintiff is entitled to recover punitive damages in an amount to be determined at trial, in addition to the compensatory damages sought herein.

FOURTH CAUSE OF ACTION
(Negligent Misrepresentation)

47. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 46 of the Complaint as if set fully set forth herein.

48. In making the misrepresentations and omissions

described in paragraphs 36, 38 and 40 above to Plaintiff, the Defendants were careless and negligent in imparting the misrepresentations and omissions, had no reasonable grounds for believing the aforesaid representations to be true, or should have known them not to be true. Plaintiff were expected to rely on the aforesaid misrepresentations and omissions and Defendants expressed the misrepresentations directly to Plaintiff with the knowledge that the misrepresentations and omissions would be relied and acted upon by Plaintiff. Defendants negligently breached their duty owed to plaintiff and induced plaintiff to enter into a business relationship with defendants and/or continued the business relationship after the date of each misrepresentation.

49. In detrimental reliance upon the aforesaid negligent misrepresentations and omissions, plaintiff entered into a business relationship with defendants and/or continued the business relationship after the date of each misrepresentation. But for defendants' misrepresentations, plaintiff would not have entered into a business relationship with defendants and/or continued the relationship past the date of each misrepresentation. Defendants, in the course of their business, profession, or employment, and/or in the business relationship with plaintiff, supplied false information and guidance to Plaintiff in connection said business relationship. Plaintiff justifiably relied upon the information. Defendants failed to exercise reasonable care or competence in obtaining or communicating said information to Plainiff.

50. Because of the negligent misrepresentations and omissions of the Defendants, Plaintiff is entitled to compensatory damages and foreseeable consequential damages in the amount of at least $468,000.00, including, without limitation, (1) a return of monies paid by plaintiff to defendants, (2) out-of-pocket expenses and legal fees incurred by plaintiff as a result of the improper work performed by defendants plus applicable interest or such other greater amount to be determined at trial including, without limitation, expert witness fees, costs and attorneys' fees.

51. In addition, because defendants' misconduct and actions were in bad faith, in flagrant disregard of their obligations to plaintiff, and were committed maliciously, knowingly, intentionally, recklessly, and/or with a conscious or gross disregard of plaintiff's rights and/or with willful fraud and deceit, plaintiff is entitled to recover punitive damages in an amount to be determined at trial, in addition to the compensatory damages sought herein.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

WHEREFORE, the plaintiff respectfully prays the Court for judgment as follows:

a. On the first cause of action, for judgment in favor of plaintiff and against defendants, and each of them, in the amount to be provable at trial, but believed to be at least $468,000, with interest thereon, together with attorneys' fees, costs and disbursements of this action;

  b. On the second cause of action, for judgment in favor of plaintiff and against defendants, and each of them, in the amount to be provable at trial, but believed to be at least $468,000, with interest thereon, together with attorneys' fees, costs and disbursements of this action;

  c. On the third cause of action, for judgment in favor of plaintiff and against defendants, and each of them, in the amount to be provable at trial, but believed to be at least $468,000, with interest thereon, and punitive damages, together with attorneys' fees, costs and disbursements of this action;

  d. On the fourth cause of action, for judgment in favor of plaintiff and against defendants, and each of them, in the amount to be provable at trial, but believed to be at least $468,000, with interest thereon, and punitive damages, together with attorneys' fees, costs and disbursements of this action.

```
Dated:   New York, New York
         May 23, 2017          _____/s/_____
                               Gabriel Fischbarg, Esq. (GF 5456)
                               230 Park Avenue, #900
                               New York, New York 10169
                               917-514-6261
                               Attorney for Plaintiff
```